UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| KEITH A. BROWN, | Case No. 1:18-cv-00470-JDP |
|---|---|
| Plaintiff, | SCREENING ORDER |
| v. | FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF BE PERMITTED TO PROCEED ON COGNIZABLE CLAIMS AND THAT NON-COGNIZABLE CLAIMS BE DISMISSED WITH LEAVE TO AMEND |
| JENNIFER SHAFFER, *et al*., | |
| Defendants. | |
| | OBJECTIONS, IF ANY, DUE IN 14 DAYS |
| | ECF No. 11 |
| | ORDER DIRECTING CLERK OF COURT TO ASSIGN CASE TO DISTRICT JUDGE |

Plaintiff is a state prisoner proceeding without counsel in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff's first amended complaint, filed April 23, 2019, ECF No. 11, is before the court for screening under 28 U.S.C. § 1915A. The court finds that plaintiff has stated due process claims against defendants Shaffer, Minor, and O'Hara. The court will recommend that plaintiff's remaining claims be dismissed without prejudice and that he be granted leave to amend the complaint.

# I. SCREENING AND PLEADING REQUIREMENTS

A district court must screen a prisoner's complaint that seeks relief against a governmental entity, its officer, or its employee. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2).

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not require detailed allegations, but legal conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim. *Id.* at 679. The complaint need not identify "a precise legal theory." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016) (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). Instead, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).

The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). However, the court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017) (quoting *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014)).

# II. BACKGROUND

California Senate Bill 261 amended California Penal Code section 3051, effective January 1, 2016. *See* Cal. Pen. Code § 3051. The amended California Penal Code section 3051 provides, in certain circumstances, for a hearing by the Board of Parole Hearings ("BPH") to review parole suitability of any prisoner who was under 23 years of age at the time of the controlling offense. *Id.* § 3051(a)(1). The statute applies to those who meet the age requirement and who are

sentenced to certain determinate or indeterminate prison terms, but it does not apply to individuals who meet the age requirement and were sentenced to life in prison without the possibility of parole. *Id.* §§ 3051(b)(1)-(3) and (h).

### III. THE FIRST AMENDED COMPLAINT

The court draws the following facts from plaintiff's first amended complaint,[1] ECF No. 11, and accepts them as true for screening purposes. Plaintiff is incarcerated at Valley State Prison ("VSP"). *Id.* ¶ 2. Plaintiff sues six individuals in their individual and official capacities: Jennifer Shaffer, Executive Officer of BPH; Line Brynjulfsen, BPH Forensic Psychologist; Michelle Minor, BPH Presiding Commissioner; Timothy O'Hara, BPH Deputy Commissioner; J. Lewis, Deputy Director of Correctional Health Care Services; and A. Shoji, Ph.D., VSP Chief of Mental Health. *Id.* ¶¶ 3-8. Plaintiff also sues BPH and California Department of Corrections and Rehabilitation ("CDCR") in their official capacities. *Id.* ¶ 9.

"In May 1987 in Los Angeles County, just after his 16th birthday, the plaintiff who is now a 48 year old adult, was arrested and charged as an adult for the murder of Terry Jackson." *Id.* ¶ 11. Plaintiff pled guilty to second-degree murder and the court sentenced him to fifteen years to life. *Id.* ¶ 13.

In 2009, plaintiff received a bone-density scan that showed "significant trauma to the skull, ear to ear." *Id.* ¶¶ 36-37. At the time of the scan, plaintiff did not remember any such trauma. *Id.* However, in 2010, plaintiff started to remember "once repressed childhood trauma" of "being hospitalized due to being raped and bludgeoned on the skull" at age six or seven. *Id.* ¶¶ 38-39. Plaintiff subsequently sought treatment for this newly-discovered injury. *Id.* ¶¶ 44-45. During such treatment, various doctors opined that the childhood trauma caused a brain injury and plaintiff's schizophrenia. *Id.* ¶¶ 45-60. One of plaintiff's doctors, Dr. Gosek, determined that plaintiff needed a "Frontal Lobe Disorder Assessment" and "had the plaintiff transferred to VSP for the provision of treatment by a neuropsychologist." *Id.* ¶¶ 61-62.

---

[1] In summarizing plaintiff's complaint, the court mirrors its structure.

3

**A. First Cause of Action: Violation of Due Process by Defendant Shaffer**

"During the 2013-2014 regular sessions, the California [legislature] passed Senate Bill 260 which requires that adults who were incarcerated when they were juveniles for committing serious felonies, to be afforded a meaningful opportunity to obtain release from prison." *Id.* ¶ 68. The bill, codified as Cal. Penal Code § 3051, establishes parameters for youth-offender parole hearings. *Id.* ¶ 69. Section 3051(e) provides that BPH "shall review, and as necessary, revise existing regulations and adopt new regulations regarding determinations of suitability made." *Id.* ¶ 71.

Plaintiff had his youth-offender parole hearing on February 24, 2017, and BPH denied him parole. *Id.* ¶ 67. Plaintiff alleges that, prior to this hearing, defendant Shaffer (1) "failed to revise the Board's existing regulation and adopt new regulations regarding the Board's determination of suitability in compliance to [§] 3051," *id.* ¶ 74, and (2) failed to "establish a process for addressing timely objections to Comprehensive Risk Assessments in writing prior to a hearing" as required by a remedial order that arose out of *Johnson v. Shaffer*, No. 2:12-CV-1059 KJM AC (E.D. Cal. 2015), *see id.* ¶ 99. Plaintiff made timely objections to a psychological report considered at the hearing, but he was provided no written response to his objections. *Id.* ¶ 67. Plaintiff contends that Shaffer's failure to revise the BPH's deficient procedures shows her bias:

> To the extent that the defendant Shaffer failed to comply with the standing Federal remedial order and to the extent that the defendant Shaffer failed to protect the plaintiff's Liberty Interest by adopting parole procedures comporting to P.C. §3051, then the plaintiff's February 24, 2017, hearing was systemically biased by an unfair process and procedures deficient to produce reliable results.

*Id.* ¶ 80.

Plaintiff argues that defendant Shaffer violated his right to procedural due process under the Fourteenth Amendment. *Id.* ¶¶ 194-96.

4

### B. Second Cause of Action: Violation of Due Process by Defendant Brynjulfsen

The psychological report, relied upon by BPH to deny plaintiff's parole, was created by defendant Dr. Brynjulfsen, a BPH forensic psychologist. *Id.* ¶¶ 82, 96. Defendant Brynjulfsen's psychological report "declared the plaintiff [to be] the highest risk for future violence potential based upon . . . factual misrepresentation[s]." *Id.* ¶ 95. During the evaluation that led to the report, plaintiff asked defendant Brynjulfsen whether "the psychological instruments being utilized comport with the standards delineated in Penal Code (P.C.) §3051, e.g., the diminished culpability of juveniles as compared to that of adults, the hallmark features of youth and any subsequent growth and increased maturity." *Id.* ¶ 87. Defendant Brynjulfsen responded that "the BPH is only required to consider the youthful offender law, and need only evaluate the offender using the standard instruments for regular offender evaluations, i.e., HCR-20, PCL-R and Ls/CMI." *Id.* ¶ 88. Defendant Brynjulfsen proceeded to conduct the evaluation in an insensitive manner, and she stopped plaintiff from fully describing his head trauma and mental health status. *Id.* ¶¶ 90-94. Plaintiff argues that defendant Brynjulfsen violated his rights under the First and Fourteenth Amendments. *Id.* ¶ 197.

### C. Third Cause of Action: Violation of Due Process by Defendants Minor and O'Hara

"Pursuant to Johnson V. Shaffer, et al. E.D. Cal. No 2:12-CV-01059 KJM, '… no later than July 1, 2016, the Board will establish a process for addressing timely objections to Comprehensive Risk Assessments in writing prior to a hearing…'" *Id.* ¶ 99. "Title 15 Div 2 Chapter 3 § 22470(e) states, '… if substantial error is identified, as defined by error which could affect that basis for the ultimate assessment of an inmate's potential for future violence, the Board's chief psychologist will review the report to determine if, a new report should be completed; if not completed, an explanation of the validity of the existing report shall be prepared.'" *Id.* ¶ 100.

Plaintiff reviewed the psychological report "and found several substantial errors that the highest risk for future violence assessment had been based upon." *Id.* ¶ 97. Accordingly, he

lodged objections to the report with BPH. *Id.* ¶¶ 101-06. Plaintiff had a hearing before BPH on February 24, 2017, and BPH failed to address his objections adequately. *Id.* ¶ 107. At the hearing, defendants Minor and O'Hara acknowledged plaintiff's objections but denied plaintiff parole anyway. *Id.* ¶¶ 108-09. During the hearing, defendant Minor interrupted plaintiff repeatedly and "minimized the brain injury." *Id.* ¶¶ 110-17. The BPH, including defendants Minor and O'Hara, denied plaintiff parole in contravention of the weight of the evidence. *Id.* ¶¶ 118-22.

Plaintiff contends that defendants' failure to address his objections demonstrates their bias:

> To the extent due to the plaintiff's timely lodged objections to errors contained in the BPH FAD [evidentiary] report that the first tribunal postponed the hearing, and to the extent that BPH refused to correct or address those errors then reconvened a second tribunal and that second tribunal acknowledged the conflict yet relied upon the error-plagued FAD [evidentiary] report to deny the plaintiff parole, then the intent of the BPH tribunal must be held to have been both individually and systemically biased.

*Id.* ¶ 123.

Plaintiff argues that defendants Minor and O'Hara violated his rights under the First and Fourteenth Amendments. *Id.* ¶¶ 198-99.

### D. Fourth Cause of Action: Violation of the ADA by BPH and CDCR

In BPH's 2017 decision to deny parole to plaintiff, the primary basis was "BPH['s] flawed psychological report which made the plaintiff's misinterpreted disorder the central theme and element." *Id.* ¶ 136. "To the extent that the psychological report is flawed and is inextricably linked to the plaintiff's insight [and] self-help, and the state of California BPH generated and relied on the report to deny parole, then the state of California BPH discriminated against the plaintiff's disability." *Id.* ¶ 137; *see also id.* ¶ 200. Plaintiff argues that defendants BPH and CDCR's decision-making process violates Title II of the ADA. *Id.* ¶¶ 204-05.

### E. Fifth Cause of Action: Violation of the ADA and the Eighth Amendment by Defendants Shoji and Lewis

"In early 2015, while housed at Chuckawalla Valley State Prison, plaintiff volunteered for

6

[Correctional Clinical Case Management System ("CCCMS")] seeking to identify the . . . psychological precursors to [his] commitment offense[.]" *Id.* ¶ 138. Through his involvement in CCCMS, plaintiff was treated by Dr. Gosek, who "believed that the rape and the beating of the 6 year old petitioner, possibly resulted in the frontal lobe disorder, which ultimately resulted in schizophrenia spectrum disorder." *Id.* ¶¶ 138-42 (capitalization altered). She "recommended that the petitioner receive a neuropsychological examination to confirm that diagnosis." *Id.* ¶ 139. "On March 5, 2015, Dr. Gosek explained to the petitioner that she (the doctor) believed that the neurons in the damage[d] area of his brain were not communicating and that the plaintiff needed to take the anti-psychotic drug Risperdal as an experiment to see if the damages can heal, until the testing." *Id.* ¶ 144. Dr. Gosek had plaintiff transferred to VSP because Chuckawalla Valley State Prison "is not a designated treatment facility." *Id.* ¶ 146.

"Since plaintiff's arrival at Valley State Prison on April 30, 2015, the Prison Health Care Receivership Corp, through its agents in the VSP Mental Health Department, has refused . . . to provide the neuropsychological evaluation by a certified specialist as required by law and by professional norms." *Id.* ¶ 147. In the face of this failure to provide the evaluation, plaintiff filed an administrative grievance "requesting that all of the tests and diagnosis for Frontal Lobe Disorder be ordered and that a thorough investigation into the delaying of treatment be conducted." *Id.* ¶ 149. This appeal was granted on December 1, 2015, and VSP Senior Psychologist Supervisor Dr. White scheduled plaintiff for a neuropsychological evaluation in January 2016. *Id.* ¶ 150.

"On February 1, 2016, an unlicensed Intern named Marshall attempted to conduct psychological tests in the guise of neuropsychological tests." *Id.* ¶ 151. Plaintiff questioned the intern's qualifications and asked whether a physical examination of his brain would be conducted. *Id.* ¶ 152. The intern stated that the tests would be postponed until she could discuss plaintiff's inquiry with her supervisor. *Id.* ¶ 153. "Instead of answering plaintiff's inquiry, on February 16, 2016, the Senior Psychologist Supervisor, Dr. S. Rossi, denied the appeal at the second level of review by mischaracterizing that petitioner refused to accept Intern Marshall's psychological evaluation on February 1st." *Id.* ¶ 154.

On October 30, 2016, plaintiff filed a new administrative grievance requesting the care that had been initiated by Dr. Gosek. *Id.* ¶ 158. "On January 23, 2017, during an interview with Dr. Amin and Dr. Griese, . . . plaintiff was . . . informed that the plaintiff is too functional and that the chief and headquarters did not find any credible basis for the requisite completion of Dr. Gosek's Frontal Lobe Disorder Assessment and that CDCR is not obligated to agree to Dr. Gosek." *Id.* ¶ 161. On July 19, 2017, plaintiff's administrative grievance was denied, but plaintiff contends there was "no reasonable clinical basis for CDCR not completing Dr. Gosek's Frontal Lobe Disorder Assessment on the plaintiff." *Id.* ¶ 162.

Plaintiff argues that these facts show deliberate indifference and negligence. *Id.* ¶¶ 162-88. Specifically, he alleges that defendants A. Shoji and J. Lewis's actions to deny plaintiff the healthcare requested by Dr. Gosek (1) violated plaintiff's rights under the Eighth Amendment and (2) were negligent under state law, *id.* ¶¶ 201-03.

### F. Relief Requested

Plaintiff prays for declaratory and injunctive relief. *Id.* at 31-33.

## IV. DISCUSSION

### A. Requirements under 42 U.S.C. § 1983

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017). To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege the deprivation of a right secured by the U.S. Constitution and laws of the United States, and (2) show that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th

Cir. 1991) (internal citations omitted). A governmental agency that is an arm of the state is not a person for purposes of § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) (explaining agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court). CDCR and BPH have been determined to be arms of the state and therefore protected from suit under § 1983. *See Brown v. Dep't of Corr. & Rehab.*, 554 F.3d 747, 752 (9th Cir. 2009) (holding that CDCR entitled to Eleventh Amendment immunity); *Jones v. Reardon*, No. 2:17-cv-0469 AC P, (E.D. Cal. July 10, 2017) ("The California Board of Parole Hearings, a state agency, is immune from damages suits under the Eleventh Amendment."). Considering the foregoing, defendants CDCR and BPH are immune from suit under the Eleventh Amendment. On the other hand, the six remaining defendants—state prison employees who can be inferred to have acted under color of state law—are proper defendants. *See Paeste v. Gov't of Guam*, 798 F.3d 1228, 1238 (9th Cir. 2015) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988))).

We next consider whether plaintiff has alleged that each of these six defendants—Shaffer, Brynjulfsen, Minor, O'Hara, Lewis, and Shoji—personally participated in the alleged constitutional deprivations as required by § 1983. *See Preschooler II*, 479 F.3d at 1183. Plaintiff plausibly alleges that defendants Shaffer, Brynjulfsen, Minor, O'Hara, and Shoji personally participated in the alleged deprivations. Plaintiff contends that Shaffer failed to perform her duty to "timely establish the protocols for objections to the psychological evidentiary reports." *Id.* ¶ 66. Plaintiff contends that Brynjulfsen created a psychological report that was based on factual misrepresentations. *Id.* ¶ 95. Plaintiff contends that Minor and O'Hara denied him parole via a hearing that lacked due process. *Id.* ¶¶ 108-22. Plaintiff contends that Shoji declined to authorize a Frontal Lobe Assessment that plaintiff required. *Id.* ¶¶ 185, 189.

Plaintiff does not plausibly allege that defendant Lewis personally participated in the alleged deprivations; instead, he seems to rely on a theory of vicarious liability. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("[V]icarious liability is inapplicable to *Bivens* and § 1983

9

suits[;] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Plaintiff contends that Lewis, a Deputy Director of Correctional Health Care Services "found the plaintiff's mental state too functional" to warrant the Frontal Lobe Assessment, *id.* ¶ 181, but plaintiff fails to allege any specific facts beyond this statement. Accordingly, plaintiff fails to allege the requisite personal participation by Lewis required to bring a claim under § 1983.

The remaining question is whether defendants Shaffer, Brynjulfsen, Minor, O'Hara, and Shoji's alleged actions state claims upon which relief can be granted.

### B. Due Process

The Fourteenth Amendment to the U.S. Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A § 1983 claim based upon procedural due process has two elements: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

#### i. The Liberty Interest

Plaintiff alleges that he has a "guaranteed Liberty Interest to being paroled pursuant to Penal Code § 3051." ECF No. 1 ¶ 98. This assertion rests on solid ground. *See* Cal. Penal Code § 3041(b) (providing that the parole board "*shall* set a release date unless it determines that . . . consideration of the public safety requires a more lengthy period of incarceration") (emphasis added); *Miller v. Oregon Bd. of Parole and Post Prison Supervision*, 642 F.3d 711, 714 (9th Cir. 2011) ("A state parole statute establishes a protected liberty interest in parole when it uses language that creates a presumption that the prisoner will be paroled if certain conditions are satisfied."); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole."), *overruled on other grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011). Plaintiff thus has sufficiently alleged the first element of a Due Process violation.

### ii. The Process That Is Due

"To satisfy the final element of a Due Process violation, plaintiffs must sufficiently allege that the procedures used to deprive them of parole are deficient under the Due Process Clause." *Johnson v. Shaffer*, No. 2:12-CV-1059 KJM AC, 2014 WL 6834019, at *8 (E.D. Cal. Dec. 3, 2014), *report and recommendation adopted*, No. 2:12-CV-1059 KJM AC, 2015 WL 2358583 (E.D. Cal. May 15, 2015). "In the context of parole, . . . the procedures required are minimal." *Swarthout*, 562 U.S. at 220. Due process requires that the state furnish a parole applicant with an opportunity to be heard and a statement of reasons for a denial of parole. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 16 (1979). "The Constitution does not require more." *Id.*; *accord Cooke*, 562 U.S. at 220 (citation omitted); *Styre v. Adams*, 645 F.3d 1106, 1108 (9th Cir. 2011).

Even though *Swarthout* and *Greenholtz* require only minimal procedural protections, the Due Process Clause guarantees a fair process before a fair tribunal:

> This court is not aware of any Supreme Court or Ninth Circuit authority holding that Due Process is satisfied by notice and an opportunity to be heard before a tribunal whose decisions are substantially determined by a biased process, nor have defendants cited any such cases to the court. Accordingly, this court does not conclude that *Swarthout* or *Greenholtz* overruled, sub rosa, well-settled authority requiring that in any hearing required by the Due Process clause, the opportunity to be heard must [be] afforded before an unbiased adjudicator in an unbiased process. *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (if parole revocation procedure includes a hearing, Due Process requires it occur before "a 'neutral and detached' hearing body"); *In re Murchison*, 349 U.S. at 136 (criminal contempt trial requires a judge who is not biased, and is free from the appearance of bias); *O'Bremski*, 915 F.2d at 422 (plaintiff "is correct in his contention that" under the Due Process Clause, "he was entitled to have his release date considered by a parole board that was free from bias or prejudice"); *Sellars*, 641 F.2d at 1303 (task of parole board officials is to render impartial decisions).

*Johnson v. Shaffer*, No. 2:12-CV-1059 KJM AC, 2014 WL 6834019, at *12 (E.D. Cal. Dec. 3, 2014), *report and recommendation adopted*, No. 2:12-CV-1059 KJM AC, 2015 WL 2358583 (E.D. Cal. May 15, 2015). In *Johnson*, a class consisting of California state prisoners who are serving life sentences and are eligible for parole consideration after having served their minimum terms, challenged the constitutionality of the protocol adopted by BPH for the preparation of

psychological risk assessment reports to be considered in determining prisoners' suitability for parole. *Johnson v. Shaffer*, No. 2:12-CV-1059 KJM AC (E.D. Cal. filed Apr. 20, 2012). The court in *Johnson* found that the representative plaintiff stated a bias claim against the panel because he alleged that the panel relied on a psychological report that it acknowledged had substantial errors—such as unfounded assertions that the plaintiff had a significant history of violence, psychopathy, and Antisocial Personality Disorder—to deny the plaintiff parole. *Id.* at *14. The court reasoned that these allegations showed that the BPH panel was biased and thereby violated the Due Process Clause of the Fourteenth Amendment.

Here, plaintiff alleges facts that satisfy the second element of a Due Process violation for his claims against defendants Shaffer, Minor, and O'Hara. He does not, however, satisfy the second element against defendant Brynjulfsen. We will discuss each claim in turn.

### a. Violation of Due Process by Defendant Shaffer

Plaintiff alleges that defendant Shaffer violated his procedural due process rights because (1) she "failed to revise the Board's existing regulation and adopt new regulations regarding the Board's determination of suitability in compliance to [§] 3051," ECF No. 1 ¶ 74, and (2) she failed to "establish a process for addressing timely objections to Comprehensive Risk Assessments in writing prior to a hearing" as required by a remedial order that arose out of *Johnson v. Shaffer*, *id.* ¶ 99. Plaintiff contends that these failures show her bias:

> To the extent that the defendant Shaffer failed to comply with the standing Federal remedial order and to the extent that the defendant Shaffer failed to protect the plaintiff's Liberty Interest by adopting parole procedures comporting to P.C. §3051, then the plaintiff's February 24, 2017, hearing was systemically biased by an unfair process and procedures deficient to produce reliable results.

*Id.* ¶ 80.

Construing plaintiff's complaint liberally, plaintiff's allegations state a claim under the Fourteenth Amendment against defendant Shaffer under a *Johnson*-type bias theory. Plaintiff alleges that "Shaffer had not established a policy in the full compliance to the [*Johnson*] remedial

12

order, which has resulted in subjecting the plaintiff to a biased process deficient to produce reliable results." *Id.* ¶ 194. Even though *Swarthout* and *Greenholtz* require only minimal procedural protections, the Due Process Clause guarantees a fair process before a fair tribunal, and plaintiff has sufficiently alleged that defendant deprived him of this protection by failing to promulgate procedures that would ensure a fair process.

### b. Violation of Due Process by Defendant Brynjulfsen

Plaintiff alleges that defendant Brynjulfsen violated his procedural due process rights because Brynjulfsen issued a psychological report, based on errors, "that made light of, and marginalized the plaintiff for raising DUE Process concerns; that did not find the plaintiff's childhood trauma constituted sufficient diminished culpability of juveniles as compared to adults; that did not find the plaintiff's early life indicative of the hallmark features of youth; and, that did not find any changes in the plaintiff's behavior to be regard as any subsequent growth and increased maturity." ECF No. 1 ¶¶ 94-95. Defendant Brynjulfsen also allegedly used testing instruments that may not have comported with § 3051. *See id.* ¶¶ 87-89. The BPH relied on this report to deny plaintiff parole.

Plaintiff's allegations fail to state a claim under the Fourteenth Amendment[2] because defendant Brynjulfsen was neither a decision-maker in the tribunal that denied plaintiff parole nor responsible for setting the hearing's procedures. Thus, she could not have violated plaintiff's due process rights. To the extent plaintiff seeks to base his claim against Brynjulfsen on an alleged failure to use the proper psychological testing instruments in contravention of state law, this is not a cognizable constitutional violation. *See Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.").

### c. Violation of Due Process by Defendants Minor and O'Hara

Plaintiff alleges that defendants Minor and O'Hara violated his procedural due process rights because they failed to address adequately his objections to the errors in Brynjulfsen's psychological report. *Id.* ¶ 101-07. At the hearing, defendants Minor and O'Hara acknowledged

---

[2] Plaintiff also argues that he has a First Amendment "right to be heard" claim against defendant Brynjulfsen. ECF No. 1 ¶ 197. However, there is no such First Amendment right.

plaintiff's objections but denied plaintiff parole anyway. *Id.* ¶¶ 108-09. During the hearing, defendant Minor interrupted plaintiff repeatedly and "minimized the brain injury." *Id.* ¶¶ 110-17. The BPH, including defendants Minor and O'Hara, denied plaintiff parole in contravention of the weight of the evidence. *Id.* ¶¶ 118-22. Plaintiff contends that defendants' failure to address his objections demonstrates their bias:

> To the extent due to the plaintiff's timely lodged objections to errors contained in the BPH FAD [evidentiary] report that the first tribunal postponed the hearing, and to the extent that BPH refused to correct or address those errors then reconvened a second tribunal and that second tribunal acknowledged the conflict yet relied upon the error-plagued FAD [evidentiary] report to deny the plaintiff parole, then the intent of the BPH tribunal must be held to have been both individually and systemically biased.

*Id.* ¶ 123.

Plaintiff's allegations state claims under the Fourteenth Amendment[3] against defendants Minor and O'Hara under a *Johnson*-type bias theory. Plaintiff alleges that defendants knew that Brynjulfsen's report contained false information yet nonetheless relied upon the report to deny plaintiff parole. *See id.* ¶¶ 198-99. Even though *Swarthout* and *Greenholtz* require only minimal procedural protections, the Due Process Clause guarantees a fair process before a fair tribunal, and plaintiff has sufficiently alleged that defendants deprived him of this protection.

### C. ADA Violation

Plaintiff has not properly named a defendant against whom his ADA claims may be asserted. Nonetheless, considering plaintiff's pro se status, the court will explain certain of the legal standards pertaining to ADA claims. Plaintiff should consider the following standards if he reasserts this claim in an amended complaint against a properly-named defendant:

Title II of the ADA provides:

---

[3] Plaintiff also argues that he has a First Amendment claim against defendants Minor and O'Hara because they interfered with his right to a hearing. *See* ECF No. 1 ¶¶ 198-99. However, there is no such First Amendment right; his due process claim must be brought under the Fourteenth Amendment.

14

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. To establish a violation of Title II of the ADA, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (alteration omitted) (quoting 42 U.S.C. § 12132). The Supreme Court has held that "[s]tate prisons fall squarely within the statutory definition of 'public entity.'" *Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B)).

Plaintiff bears the burden of proving that he is disabled under the Act. *See Bates v. United Parcel Serv.*, 511 F.3d 974, 990 (9th Cir. 2007). The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1)(A)-(C)).

To determine whether an impairment substantially limits an individual, a court considers "the nature, severity, duration, and impact of the impairment." *Fraser v. Goodale,* 342 F.3d 1032, 1038 (9th Cir. 2003). Whether a plaintiff "has a disability covered by the ADA is an individualized inquiry." *Bragdon v. Abbott*, 524 U.S. 624, 657 (1998).

### D. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need

15

was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* When a prisoner alleges a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs. *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)). Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—on appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *See Toguchi*, 391 F.3d at 1058; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff has failed to state a deliberate indifference claim against defendant Shoji. Plaintiff alleges that his prior doctor, Dr. Gosek, recommended that plaintiff receive a neuropsychological examination called a Frontal Lobe Disorder Assessment. ECF No. 1 ¶ 139. Subsequent doctors declined to authorize this examination, informing plaintiff that he was "too functional and that the

chief and headquarters did not find any credible basis for the requisite completion of Dr. Gosek's Frontal Lobe Disorder Assessment and that CDCR is not obligated to agree to Dr. Gosek." *Id.* ¶ 161. Plaintiff appealed this decision, and defendant Shoji denied the appeal. *Id.* ¶ 181. These allegations fail to satisfy either prong of the deliberate indifference inquiry. The first prong—demonstration of a serious medical need—is not satisfied because plaintiff only alleges that the assessment will allow him to "identify his precursors to the [commitment] offense," ECF No. 1 ¶ 188, not that he has any medical need for the assessment. The second prong is likewise unsatisfied because plaintiff's allegations fail to show either Shoji's failure to respond to plaintiff's need or harm resulting from the lack of the examination.

### E. Negligence

The California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim and action on or rejection of the claim are conditions precedent to suit. *DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal. 4th 983, 989-90 (2012); *see also Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with California's Government Claims Act. *DiCampli-Mintz*, 55 Cal. 4th at 990; *see also Mangold*, 67 F.3d at 1477.

Plaintiff alleges that defendant Shoji was negligent under state law, ECF No. 11 ¶ 203, but he has not alleged compliance with the Government Claims Act. Accordingly, plaintiff has failed to state any state-law tort claims.

### V. CONCLUSION

The court has screened plaintiff's complaint and concludes that plaintiff has stated due process claims against defendants Shaffer, Minor, and O'Hara. The court will recommend that plaintiff's remaining claims be dismissed without prejudice and that he be granted leave to amend the complaint.

Should plaintiff choose to amend the complaint, the amended complaint should be brief,

Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of plaintiff's constitutional or other federal rights. *See Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. *See id.* at 677. Plaintiff must allege that each defendant personally participated in the deprivation of his rights. *Jones*, 297 F.3d at 934 (emphasis added). Plaintiff should note that a short, concise statement of the allegations in chronological order will assist the court in identifying his claims. Plaintiff should name each defendant and explain what happened, describing personal acts by the individual defendant that resulted in the violation of plaintiff's rights. Plaintiff should also describe any harm he suffered from the violation of his rights. Plaintiff should not fundamentally alter his complaint or add unrelated issues. *See* Fed. R. Civ. P. 18; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits . . . .").

Any amended complaint will supersede the original complaint, *Lacey v. Maricopa County*, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete on its face without reference to the prior, superseded pleading, *see* E.D. Cal. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

**IV.     ORDER**

The clerk of court is directed to assign this case to a district judge, who will preside over this case. The undersigned will remain as the magistrate judge assigned to the case.

**V.      RECOMMENDATIONS**

Under 28 U.S.C. § 636(c)(1), all parties named in a civil action must consent to a magistrate judge's jurisdiction before that jurisdiction vests for "dispositive decisions." *Williams*

*v. King*, 875 F.3d 500, 504 (9th Cir. 2017).  No defendant has appeared or consented to a magistrate judge's jurisdiction, so any dismissal of a claim requires an order from a district judge. *Id.*  Thus, the undersigned submits the following findings and recommendations to a United States District Judge under 28 U.S.C. § 636(b)(l):

1. Plaintiff states due process claims against defendants Shaffer, Minor, and O'Hara.
2. Plaintiff's remaining claims should be dismissed without prejudice, and plaintiff should be granted leave to amend the complaint.
3. If plaintiff files an amended complaint, defendants Shaffer, Minor, and O'Hara should not be required to respond until the court screens the amended complaint.

Within fourteen days of service of these findings and recommendations, plaintiff may file written objections with the court.  If plaintiff files such objections, he should do so in a document captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *See Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   May 13, 2019                                               _____
                                                                         UNITED STATES MAGISTRATE JUDGE

No. 203