1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KEITH A. BROWN,                        Case No.  1:18-cv-00470-AWI-HBK (PC)

12              Plaintiff,                   FINDINGS AND RECOMMENDATIONS TO
                                            GRANT DEFENDANTS' MOTION TO
13        v.                                 DISMISS[1] AND DENY OTHER MOTIONS
                                            AS MOOT
14   JENNIFER SHAFFER; ET. AL.,
                                            (Doc. Nos.  26, 30, 31 )
15              Defendants.
                                            FOURTEEN-DAY OBJECTION PERIOD
16

17        Pending before the Court is a motion to dismiss filed on behalf of Defendants Shaffer,

18   Minor, and O'Hara.  (Doc. No. 26).  Plaintiff filed a response in opposition.  (Doc. No. 27).

19   Defendants filed a Reply.  (Doc. No. 28).  Plaintiff filed a Sur-Reply.[2]  (Doc. No. 29).  This

20   matter is ripe for review.[3]  For the reasons set forth below, the undersigned recommends the

21   _____

22   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Eastern District of
     California Local Rule 302 (E.D. Cal. 2019).

23   [2] Parties do not have a right to file a sur-reply.  Local Rule 230(l).  Generally, courts disfavor sur-replies
     absent articulation of good cause why leave to file a sur-reply should be granted.  *Garcia v. Biter*, 195
24   F.Supp.3d 1131, 1133 (E.D. Cal. July 18, 2016).  Plaintiff did not seek leave to file a sur-reply and does
     not address the good cause standard.  Nevertheless, affording Plaintiff the leniency due *pro se* litigants and
     considering the sur-reply clarifies Plaintiff's arguments without raising new arguments, the undersigned
25   did not strike it and considered the arguments raised therein for purposes of this F&R.

26   [3] Also pending is Plaintiff's motion to appoint counsel and certify a class action (Doc. No. 30) and his
     motion for judgment on the pleadings (Doc. No. 31).  Based on the undersigned's recommendation to
     grant Defendants' motion to dismiss, the undersigned further recommends denying as moot Plaintiff's
27   motion to certify a class, motion for appointment of counsel and motion for judgment on the pleadings.
     Alternatively, Plaintiff's motion for judgment on the pleadings is premature should the Court reject the
28   F&R.

1  District Court grant Defendants' motion to dismiss.

2                          **I. BACKGROUND**

3          **A. The Operative Complaint and Attachments**

4          Plaintiff Keith Brown, a state prisoner proceeding *pro se*, initiated this action while

5  incarcerated at Valley State Prison by filing a civil rights complaint under 42 U.S.C. § 1983.

6  (Doc. No. 1).  Plaintiff proceeds on his First Amended Complaint which alleges, *inter alia*, due

7  process violations under the Fourteenth Amendment of the U.S. Constitution in connection with

8  Plaintiff's February 24, 2017 parole board hearing ("PBH") at which he was denied youthful

9  offender parole.  (Doc. No. 11, "FAC").  Plaintiff attaches the following exhibits[4] to his FAC:

10  Plaintiff's healthcare appeals and responses, and excerpts from Plaintiff's medical records

11  (Exhibit A, Doc. No. 11 at 34-51); transcript from Plaintiff's September 9, 2016 PBH (Exhibit B,

12  Doc. No. 11 at 52- 58); transcript of Plaintiff's February 24, 2017 PBH and decision (Exhibit C,

13  Doc. No. 11 at 59-159); Comprehensive Risk Assessment ("CRA") dated July 19, 2016 (Exhibit

14  D, Doc. No. 11 at 160-182); *pro se* Petition to Advance Parole Hearing postmarked November

15  27, 2017 and Denial dated December 7, 2017 (Exhibit E, Doc. No. 183-201); excerpt of transcript

16  and decision from August 30, 2011 PBH (Exhibit F, Doc. No. 11 at 202-206); CDCR

17  Administrative Appeal, Log. No. HC16007271 (Exhibit G, Doc. No. 11 at 207-217) and

18  Declaration of Plaintiff dated March 18, 2018 (Exhibit H, Doc. No.  218-220).

19          The FAC originally identified four defendants in their official and individual capacities

20  and five separate counts, but as discussed below, not all Defendants or claims survived screening.

21  The FAC named the following as Defendants: (1) Jennifer Shaffer, Executive Officer of the

22  Board of Prison Hearing ("BPH"); (2) Line Brynjulfeen, Forensic Psychologist with BPH; (3)

23  Michelle Minor, presiding Commissioner with BPH; and (4) Timothy O'Hara, Deputy

24  Commissioner with BPH.  (*Id.* at 1-2).  The FAC alleged the following five counts:

25          (1) Plaintiff's procedural due process and liberty interest in parole
            were violated when BPH failed to adopt regulations consistent with
26

27  [4] The exhibits referred to as "Miscellaneous Documents" are separately identified by exhibit letter and
description.  The undersigned refers to the specific exhibit by the letter designated by Plaintiff as well as
28  the CM/ECF page number for ease of reference.

                                    2

1    *Johnson v. Shaffer*, Case No. 2:12-cv-1059-KJM AC, 2014 WL
     6834019, at *8 (E.D. Cal. Dec. 3, 2014, *report and*
2    *recommendation adopted by* Case No. 2:12-cv-1059-KJM AC,
     2015 WL 2358583 (E.D. Cal. May 15, 2015)[5]; and California Penal
3    Code § 3051, *id.* at 14-16;

4    (2) Plaintiff was denied due process when the psychiatrist,
     Defendant Byrnjulfsen, conducted an arbitrary and capricious
5    evaluation, by relying on a standard of review for adults, not
     juvenile offenders and falsely found Plaintiff wanted revenge on
6    Plaintiff's childhood legal guardian, among other things, *id.* at 16-
     18;
7
     (3) Plaintiff was denied a fair PBH, *id.* at 18-21;
8
     (4) In Plaintiff's Youthful Offender's Hearing, the BPH violated the
9    ADA when denying parole as opposed to employing an
     individualized inquiry, *id.* at 22-23; and
10
     (5) Defendants failed to provide the requisite care in violations of
11   the Eighth Amendment and the ADA, *id.* at 23-29.

12   Plaintiff requests declaratory and injunctive relief.  (*Id*. at 32-33).

13           **B.  The Screening Order / Findings and Recommendations**

14           As required by 28 U.S.C. § 1915A, the previously assigned magistrate judge issued a

15   F&R concerning the FAC on May 13, 2019.  (Doc. No. 13).  The District Court adopted the F&R

16   in full.  (Doc. No. 17).  Although the Court gave Plaintiff the opportunity to file a second

17   amended complaint, Plaintiff opted not to do so.  (Doc. No. 18).  It should be noted that neither

18   the F&R nor the adoption of the F&R addressed the attachments to the FAC.  (*See generally* Doc.

19   Nos. 13, 17).

20           The following "facts"[6] are set forth in the FAC.  Just shy of his sixteenth birthday,

21   Plaintiff pled guilty to second-degree murder with use of a firearm and was sentenced to fifteen

22   years to life with the possibility of parole in 1987.  (*Id.* at 8-9; 62).  Some time in 2009, a bone-

23

24   [5] *Johnson* was a class action lawsuit that challenged the constitutionality of the protocol adopted
     by California's Board of Parole Hearings' (Board) Forensic Assessment Division (FAD) for use
25   in the preparation of psychological evaluations, referred to as Comprehensive Risk Assessments
     (CRAs), to be considered in determining the suitability of class members for parole. It was
26   settled by agreement of the parties. ("Agreement").  The court held a fairness hearing on December 18,
     2015 and gave final approval to the Agreement in an order filed May 27, 2016. Case No. 2:12-cv-1059-
27   KJM-AC.  (Doc. Nos. 83, 161, 167).
     [6] As discussed more fully *infra*, the exhibits attached to the FAC dispute certain of the allegations in the
28   FAC but were not addressed in the F&R.

                                                    3

density scan was completed on Plaintiff and he was informed that he might have sustained "significant trauma to the skull, ear to ear" sometime in the past.  (*Id.*, ¶¶ 35-36).  Sometime in 2010, Plaintiff began recalling a traumatic incident where he had been raped at age six or seven and bludgeoned on the skull.[7]  (*Id.,* ¶¶ 38-39).  In 2010, Plaintiff "declined to participate in the Forensic Assessment Division ("FAD") report but a report was authored based upon his file.  (*Id.,* ¶ 40).  Plaintiff sought treatment from various doctors for his newly recalled injury, after his August 2011 BPH panel found his account of childhood trauma "credible."  (*Id.*, ¶¶ 44-59).  In 2015, Dr. Gosek, a psychiatrist, confirmed "Frontal Lobe damages" to Plaintiff's brain and opined Plaintiff's brain injury likely resulted in schizophrenia spectrum disorder and recommended Plaintiff for a "Frontal Lobe Disorder Assessment" and transferred Plaintiff to Valley State Prison for "treatment by a neuropsychologist."  (*Id.*, ¶¶ 59-62).

In 2013-14, the California legislature passed Senate Bill 260, which requires adults who were incarcerated when they were juveniles for committing serious felonies to be afforded a meaningful opportunity to obtain release.  The bill, codified at Cal. Penal Code § 3501 establishes certain criteria applicable to youthful offender parole hearings.[8]  (*Id.*, ¶¶ 69-70).

Plaintiff had his youth-offender BPH on February 24, 2017 during which he objected to the FAD report prepared by Dr. Brynjulfsen.  (*Id.*, ¶¶ 67, 82, 96).  According to Plaintiff, the report "declared the plaintiff [to be] the highest risk for future violence potential based upon . . . factual misrepresentation[s]."  (*Id.* ¶ 95).  After reviewing the report and finding "several substantial errors that the highest risk for future assessment had been based upon," Plaintiff lodged objections to the report with the BPH.  (*Id.*, ¶ 101-196).  At the BPH hearing, Defendant

---

[7] Plaintiff refers to a rape during his youth when he was hit in his head causing him brain injuries. In the CRA attached to the FAC, it is noted Plaintiff believes he was "sexually and physically assaulted by family members and others at the masonic lodge at age six; and, … 'hypnotized' by someone to 'forget about succeeding in life' and that he would 'not amount to anything.'"  (*See* Doc. No. 11 at 168).  During his 2017 BPH, Plaintiff testified to similar facts and circumstances at the masonic lodge, except he believed the events happened at age 10.  (*Id.* at 106-107).  To the extent Plaintiff challenges the CRA, Plaintiff's testimony does not dispute this portion of the report.
[8] *See* Cal. Pen. Code Ann., § 3051, subd. (b)(1) (West 2020) ("A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a determinate sentence shall be eligible for release on parole at a youth offender parole hearing during the person's 15th year of incarceration.").

1   Minor interrupted Plaintiff repeatedly and "minimized the brain injury." (*Id.* ¶¶ 110-17).  The BPH,

2   including Defendants Minor and O'Hara, denied Plaintiff parole in contravention of the weight of the

3   evidence. (*Id.* ¶¶ 118-22).  Plaintiff alleges prior to the hearing, Shaffer had failed to adopt

4   regulations as required by Cal. Penal Code § 3501 and had failed to "establish a process for

5   addressing timely objections to the [CRA] in writing prior to a hearing" as required by the

6   remedial order entered by the Sacramento Division of this Court in by *Johnson v. Shaffer*, Case

7   No. 2:12-cv-1059-KJM AC (E.D. Cal. Dec. 3, 2014).

8          The F&R, as adopted, concluded the FAC stated cognizable due process claims against

9   Defendants Shaffer, Minor, and O'Hara, but dismissed all remaining claims and Defendants.[9]

10  (Doc. No. 13 at 4-6).  Specifically, the F&R found a due process claim against Defendant Shaffer

11  for (1) failing to revise the BPH existing regulations to adopt new regulations compliant with

12  California Penal Code § 3051; and (2) failing to establish a process for addressing timely

13  objections to the CRAs in writing prior to the hearing as required by *Johnson*. (*Id.* at 12-13).  As

14  to Defendants Minor and O'Hare, the F&R noted that the FAC alleged these Defendants denied

15  Plaintiff parole in contravention of the great weight of the evidence because they knew the

16  Brynsjulfsen report contained false information, but nevertheless relied on the report to deny

17  Plaintiff parole. (*Id.* at 14).  The order noted that the FAC alleged Defendant Minor interrupted

18  Plaintiff during the hearing and constantly "minimized his brain injury." (*Id.*).

19         **B. Defendants' Motion to Dismiss**

20         Defendants move to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 26).

21  Defendants argue Plaintiff received a parole hearing where he presented his case with the

22  assistance of an attorney, was informed why he did not qualify for parole, which constitutes all

23  the process due under the U.S. Constitution. (*Id.* at 3).  Defendants further argue that Executive

24  Officer Shaffer <u>did</u> promulgate rules and regulations for the PBHs addressing objections to

25  _____

26  [9] Specifically, the F&R found the FAC failed to allege a cognizable claim against Defendant Brynjulfsen because he was neither a part of the tribunal that denied Plaintiff parole, nor responsible for determining the procedures for the hearing.  (Doc. No. 13 at 13).  And the F&R further found the FAC failed to state an

27  ADA claim, an Eighth Amendment deliberate indifference to medical needs claim, or a negligence claim under the California Government Claims Act.  (*Id.* at 14-19).

28

1  CRAs, as evidenced by the exhibits attached to Plaintiff's FAC.  (*Id.*).  Defendants contend that

2  even if these PBH rules did not comply with the deadline set forth in the *Johnson* remedial order,

3  such a violation does not amount to a Constitutional due process violation.  (*Id.*).  Finally,

4  Defendants argue the facts presented in this case are distinguishable from the facts in *Johnson* and

5  this Court is not bound by the *Johnson* decision here.  *(Id.)*.  Further, Defendants point out the

6  transcript of the 2017 BPH contradicts Plaintiff's allegations that Defendants Minor and O'Hara

7  denied Plaintiff a fair hearing by failing to "adequately" consider Plaintiff's objections to the

8  CRA.  (*Id*).

9        In opposition, Plaintiff points to the F&R screening discussed above, finding his FAC

10  stated a cognizable claim.  (Doc. No. 27 at 1-2).  Plaintiff maintains that Defendants violated

11  California Penal Code § 3051 because they did not have regulatory guidance on how to properly

12  evaluate for parole crimes committed by juveniles, like Plaintiff's conviction and sentence arising

13  at age 16.  (*Id.* at 2-3).  Plaintiff reiterates that Defendant Minor failed to promulgate rules

14  requiring <u>written</u> <u>responses</u> and <u>objections</u> prior to the hearing.  (*Id.* at 3, emphasis added).

15  Plaintiff argues that the Defendants' failure to promulgate rules in compliance with *Johnson*

16  shows the parole board had a "biased agenda."  (*Id.*).  Plaintiff contends that *Swarthout v. Cooke*,

17  562 U.S. 216 requires an "unbiased" PBH.   (*Id.* at 7).

18        In Reply, Defendants correctly argue that screening under the Prison Litigation Reform

19  Act is not a substitute for a 12(b)(6) motion and point out that the Court's Screening Order did

20  not reference or consider the exhibits attached to Plaintiff's FAC.  (Doc. No. 28 at 2).  Using the

21  evidence attached to Plaintiff's FAC, which is proper to do at the 12(b)(6) stage, notes that the

22  evidence contradicts the factual allegations in the FAC and argues the then-assigned magistrate

23  judge incorrectly applied *Johnson* to this case.  (*Id.* at 2).  Defendants reiterate that Plaintiff was

24  afforded all due process protections during his PBH.  (*Id.* at 3-4).

25        In Sur-Reply, Plaintiff clarifies that his claims against Shaffer involve: (1) Shaffer's

26  failure to revise the parole board's existing regulations and adopt new regulations in compliance

27  with California Penal Code § 3051 and (2) that Shaffer failed to establish a process for addressing

28  timely objections to CRAs in writing <u>before</u> the hearing.  (Doc. No. 29 at 1) (emphasis in

1    original).  Plaintiff contends that the parole board regulations do not comply with California Penal

2    Code § 3051 because there is no guidance on how the board is to weigh "diminished culpability"

3    for a crime committed by a juvenile.  (*Id.* at 2).  Plaintiff believes that if the parole board had

4    responded to his objections to the CRA in writing before the hearing, then the parole board could

5    not have used the CRA to deny him parole.  (*Id.* at 3).

6                                    **II.  STANDARD OF REVIEW**

7           A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

8    12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

9    2001).  While *pro se* complaints are held to "less stringent standards," than those drafted and filed

10   by attorneys, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Federal Rules of Civil Procedure 8 and

11   10 still apply to *pro se* actions.  A complaint must contain sufficient factual matter to state a claim

12   for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A complaint

13   is plausible on its face when it contains sufficient facts to support a reasonable inference that the

14   defendant is liable for the misconduct alleged."  *Id.*  The sheer possibility that a defendant acted

15   unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the

16   plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Service*,

17   572 F.3d at 962, 969 (9th Cir. 2009).

18          At this stage of the proceedings, the Court accepts the facts stated in the Complaint as true.

19   *Hosp. Bldg. Co. v. Rex Hosp. Tr.*, 425 U.S. 738, 740 (1976).  The Court does not accept as true

20   allegations that are merely conclusory or are based on unreasonable inferences or unwarranted

21   deductions.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Nor do legal

22   conclusions qualify as facts.  *Iqbal*, 556 U.S. at 678.  Because Plaintiff is *pro se*, the Court liberally

23   construes the pleading in the light most favorable to Plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411,

24   421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003).  Further, a court's finding

25   that a complaint states a cognizable claim at screening under 28 U.S.C. § 1915A does not preclude

26   the court from dismissing the complaint later for failure to state a claim under Fed. R. Civ. P.

27   12(b)(6).  *See Easley v. Pinnell*, 182 F.3d 924, n. 3 (9th Cir. 1999) (discussing in a footnote that the

28   court's determination the complaint stated non-frivolous claims under § 1915A at screening did not

                                                        7

1  prelude subsequent dismissal for failure to state a claim); *Coleman v. Maldonado*, 564 F. App'x

2  893, 894 (9th Cir. 2014) (a district court may still properly grant a motion to dismiss despite a prior

3  screening order finding the complaint stated a claim).

4        In ruling on a motion to dismiss, the Court may consider only the complaint, any exhibits

5  attached thereto, and matters which may be judicially noticed pursuant to Federal Rule of

6  Evidence 201. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Ross v.*

7  *Williams*, 950 F.3d 1160, 1168-69 (9th Cir. 2020). Thus, the Court may consider the exhibits

8  attached to the FAC, including the transcript of the 2017 BPH as well as consider the *Johnson*

9  case. Where the allegations in a complaint are contradicted by exhibits, the allegations need not

10  be accepted as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

11  ### III.  APPLICABLE LAW AND ANALYSIS

12        There is no federal constitutional right to parole. *See Swarthout v. Cooke*, 562 U.S. 216,

13  220 (2011) (reversing Ninth Circuit Court of Appeals decision granting habeas corpus relief to a

14  petitioner challenging parole board release hearing finding no violation of federal law present when

15  inmate had opportunity to be heard and was provided statement of reasons why parole was denied);

16  *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *Greenholtz v. Inmates of Nebraska Penal &*

17  *Corr. Complex*, 442 U.S. 1 (1979) (recognizing nominal requirements for federal due process and

18  noting a difference between parole-revocation hearings verses parole-release hearings, where an

19  otherwise lawfully convicted inmate remains confined, subject to the sentence).

20        In *Swarthout*, California's parole hearings were subject to review in the habeas corpus

21  context. 562 U.S. at 216. Petitioner Swarthout filed a habeas corpus petition alleging violations

22  of his due process rights when he was not released on parole. *Id.* at 217-218. The district court

23  denied the petitioner's § 2254 petition. *Id.* Reversing the district court, the Ninth Circuit Court

24  of Appeals determined California's parole statute created a liberty interested protected under the

25  Due Process Clause, and that "California's 'some evidence' requirement" was a component of

26  that federal protected interest. The United States Supreme Court reversed the Ninth Circuit on

27  that point. *Id.* at 219-222. In doing so, the United States Supreme Court recognized that "[t]here

28  is no right under the Federal Constitution to be conditionally released before the expiration of a

1   valid sentence, and the States are under no duty to offer parole to their prisoners." *Id.* at 220.

2   However, where "a State creates a liberty interested, the Due Process Clause requires fair

3   procedures for its vindication- and federal courts will review the application of those

4   constitutionally required procedures." *Id.*  In the parole context, the procedures required are

5   "nominal." *Id.* (citing *Greenholtz*, 442 U.S. 1).  All the Federal Constitution requires is an

6   opportunity to be heard and a statement of reasons why parole was denied. *Id.*  The "some

7   evidence" standard applied by the State of California does not amount to a requirement under

8   federal law. *Id.* at 221-222.  Further, the Supreme Court recognized that it is well established that

9   an error of State law does not amount to a denial of federal due process. *Id*. at 222.  In other

10   words, a violation of California's "some evidence" standard, a violation of state law, is not

11   tantamount to a federal Due Process constitutional violation.

12        In *Greenholtz*, the United States Supreme Court reviewed Nebraska's parole release

13   statutes, noting a significant difference between hearings where release on parole may be granted,

14   as opposed to hearings where parole may be revoked.  442 U.S. at 9-10.  Citing Judge Henry

15   Friendly, the Supreme Court noted "there is a human difference between losing what one has and

16   not getting what one wants." *Id*. at 10 (citations omitted).  "That the state holds out the possibility

17   of parole provides no more than the mere hope that the benefit will be obtained." *Id*. (citations

18   omitted) (emphasis in original).  Rather, "[i]t is axiomatic that due process 'is flexible and calls

19   for such procedural protections as the particular situation demands.'" *Id.*  The Supreme Court

20   recognized that in the parole release context, parole boards consider many variables. *Id.* at 15-16.

21   Due process concepts do not require the parole board to specify any particular evidence in the

22   inmate's file, or in his interview, on which it rests to determine that the inmate is not ready for

23   conditional release.  Instead, the Supreme Court found inmates' Due Process rights were

24   protected by Nebraska's system that allowed inmates an opportunity to be heard and provided

25   notice informing the inmates where they fell short if the board denied parole. *Id*. at 16.  The

26   Supreme Court found the Nebraska statute created a liberty interest in parole when certain factors

27   were found to exist.  However, the importance of the precise wording in each state's statute was

28   further emphasized when the Supreme Court found the Connecticut parole statute does not create

1  a liberty interest because of the discretion given to the parole board.  *Connecticut v. Dumschat*,

2  452 U.S. 458 (1981).

3      Admittedly, as recognized by *Johnson*, a parole hearing must comport with basic due

4  process, which mandates that the hearing be fair and unbiased.  *Johnson*, 2014 WL 6834019 at

5  *8.  A fair and unbiased tribunal means the tribunal is impartial.  *In re Murchison*, 349 U.S. 133,

6  136 (1955) (finding fairness "requires an absence of actual bias in the trial of cases," where "no

7  man can be a judge in his own case and no man is permitted to try cases where he an interest in

8  the outcome.").  With these Supreme Court precedents in mind, the Court turns to addresses

9  Defendant's motion to dismiss the remaining claims in the FAC.

10      **A.  Plaintiff has a Liberty Interest in his BPH**

11      Ordinarily courts engage in an analysis of the language in the particular state's parole

12  statute to determine whether parole is discretionary or mandatory to determine whether the statute

13  creates a liberty interest in release on parole.  *Supra* at 8.  This determination satisfies the first

14  element of a due process claim, *e.g.* whether the inmate has a liberty interest for which he or she

15  is afforded due process.  The Ninth Circuit determined California's parole statute created a liberty

16  interest in parole-release in *Swarthout*.  And on review, the United States Supreme Court found

17  "no need to review" the Ninth Circuit's determination that California's parole statute created a

18  liberty interest in parole because "it [was] a reasonable application of [Supreme Court] cases."

19  562 U.S. at 219-220.  This Court is bound by that conclusion.  *Zuniga v. United Can. Co.*, 812

20  F.2d 443, 450 (9th Cir. 1987) (citations omitted).  And Defendants do not challenge the existence

21  of that interest.  (*See generally* Doc. No. 26). For purposes of this order and based upon the facts

22  alleged, the undersigned finds the California Youthful Offender parole statute creates a liberty

23  interest in parole-release.  *Swarthout*, 562 U.S. 219-220; *see also Johnson*, 2014 WL 6834019, at

24  *9-*10 (recognizing mandatory language in California's parole statute and finding plaintiff's

25  allegations satisfied the first element of a due process claim).

26      **B.  The FAC Fails to Adequately State a Due Process Claim against Defendants**

27      Having found a liberty interest, the undersigned next considers whether the FAC alleges

28  sufficient facts that the process afforded to Plaintiff violated his due process rights protected

1  under the Fourteenth Amendment of the U.S. Constitution.  The undersigned finds the FAC does

2  not allege sufficient facts and finds that the non-conclusory allegations are refuted by the exhibits

3  attached to the FAC.

4  　　　　Plaintiff is serving a lawful life sentence for second-degree murder.  The FAC does not

5  allege that Plaintiff was deprived of his Youthful Offender parole hearings, that he was not

6  provided an opportunity to appear and present or challenge evidence, or not provided with an

7  explanation why his parole release was denied.  While the FAC contains allegations of bias, the

8  FAC identifies no facts to support this conclusory allegation.  Indeed, the exhibits attached to the

9  FAC show the contrary to be true.

10  　　　　On February 24, 2017, Plaintiff's BPH was held at Valley State Prison where he was

11  represented by Attorney Daniel Iyayi.  (Doc. No. 11 at 60-159, Exhibit C, Transcript of Hearing).

12  At the inception of the hearing, Defendant Minor expressly noted that Plaintiff "qualifies as a

13  youthful offender pursuant to Penal Code Section 3051 which states in part prior to attaining 23

14  years of age the board shall give great weight to the diminished culpability of juveniles as

15  compared to adults, the hallmark feature of youth, and any subsequent growth and maturity of the

16  prisoner in reviewing the prisoner's suitability for parole pursuant to Penal Code Section 3041.5."

17  (*Id*. at 62).  Plaintiff confirmed that he received his notice of hearing rights and needed no

18  accommodations for the hearing.  (*Id*. at 63-67).  Attorney Iyayi noted at the beginning of the

19  hearing that Plaintiff objected to the July 7, 2016 CRA report authored by (now dismissed

20  Defendant) Brynjulfen.  (*Id*. at 67).  Plaintiff confirmed he had submitted objections to the CRA.

21  (*Id*.).  When questioned whether there were "factual errors" Plaintiff stated that there were

22  "substantial errors" and provided an example which Defendant Minor overruled.  (*Id*. at 69-70).

23  Defendant Minor explained that the report would be given "appropriate weight" and that "is just

24  part of the evidence" the board would consider.  (*Id*. at 70).  Defendant Minor further explained

25  how the panel would consider the CRA and what weight, if any, the board would assign to it.  (*Id*.

26  at 77-78).  Throughout the hearing, Plaintiff stated his objections to parts of the report.  (*Id*. at

27  123-128).  The panel identified its reasoning for denying Plaintiff parole in detail.  (*Id*. at 149-

28  156).  Significantly, the panel noted its mandate to consider the Youthful Offender factors but

11

1  pointed to Plaintiff's lack of insight into the causative factors of his crime, and his lack of

2  "sufficient coping skills and strategies" as demonstrated by some incident reports and his

3  behavior at the hearing, which at times was argumentative and disruptive.  (*Id*. at 151-153).

4  Absent requesting and being granted an earlier hearing, Plaintiff's next BPH is scheduled for five

5  years.  (*Id*. at 157).

6       The Court finds *Greenholtz* to be on point in evaluating whether the FAC contains

7  sufficient facts alleging a due process violation.  As set forth above, in *Greenholtz*, the Supreme

8  Court reviewed Nebraska's parole statutes, specifically parole-release, as opposed to parole

9  revocation proceedings at issue in *Morrisey v. Brewer*, 40 U.S. 471 (1972).[10]  A careful review of

10  *Greenholtz* supports granting Defendants' motion to dismiss.  In *Greenholtz*, the Supreme Court

11  found "nothing in the due process concepts as they have thus far evolved that requires the Parole

12  Board to specify the particular 'evidence' in the inmate's file or at his interview on which it rests

13  the discretionary determination that an inmate is not ready for conditional release."  *Id.* at 15.

14  The Supreme Court specifically cautioned the federal courts against turning a parole-release

15  hearing into an "adversary proceeding":

16            To require the parole authority to provide a summary of evidence
            would tend to convert the process into an adversary proceeding and
17            to equate the Board's parole-release determination with a guilt
            determination.  The Nebraska statute contemplates, and experience
18            has shown, that the parole-release decision is, as we noted earlier,
            essentially an experienced predication based on a host of variables.
19            *See* Dawson, The Decision to Grant or Deny Parole: A Study of
            Parole Criteria in Law and Practice, 1966 Wash.U.L.Q. 243, 299-
20            300. . . .

21            The Nebraska procedure *affords an opportunity to be heard, and
            when parole is denied it informs the inmate in what respect he falls*
22            *short of qualifying for parole*; this affords the process that is due
            under these circumstances.  *The Constitution does not require*
23            *more.*

24  _____

25  [10] The United States Supreme Court noted salient differences between parole revocation hearings verses
    release from confinement on parole hearings in *Greenholtz*.  442 U.S. at 9-10 (noting "[t]he fallacy in
26  respondent's position is that parole release and parole revocation are quite different.").   Because the issue
    presented here involves release from confinement on parole, *Greenholtz* is on point, *Morrisey* is not.
27  Therefore, the procedures afforded to individuals facing revocation of parole in *Morrisey* are of no
    consequence in this case.

28

*Id.* at 15-16 (internal citations omitted) (emphasis added).

The Court agrees with Defendants that the facts set forth in the FAC fail to rise to the level of a Federal Constitutional Due Process violation.  A review of the allegations set forth in the FAC and exhibits attached thereto, show Plaintiff had an opportunity to be heard at his BPH hearing, including making written objections to the CRA form, and the parole board ultimately denied him parole and provided him in a detailed decision explaining why parole was denied. (*See e.g.* Doc. No. 11 at 19) (noting objections to CRA form); (*id.* at 65-157) (hearing transcript dated Feb. 24, 2017); (*see also id.* at 161-183) (CRA form).  Although Plaintiff challenges the evidence the parole board used to deny him parole-release, as set forth in *Greenholtz*, the parole board need not point to any specific evidence upon which it relied to deny Plaintiff parole-release. "The parole release decision . . . . is . . . subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." *Greenholtz*, 442 U.S. at 10.  Further, any claims that the board relied on false information is *Heck*[11] barred and cognizable only in habeas.  *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) (affirming district court's dismissal of § 1983 complaint under Fed. R. Civ. P. 12(b)(6) challenging false reports relied upon by board in denying parole as not stating cognizable claim).

The FAC also alleges a violation of due process for the parole board's failure to promulgate rules governing the hearings in compliance with California Penal Code § 3015 and *Johnson v. Shaffer*.  To the extent Plaintiff brings a claim based on an alleged violation of § 3015, it is well established that a purported violation of state law does not amount to a violation of the Federal Constitution.  *Swarthout*, 562 U.S. at 221 (recognizing liberty interest created by California parole statute but reversing appellate court's finding that due process was violated when applying California's "some evidence" standard because such would be a violation of state law, not a requirement under the U.S. Constitution) (citing *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).  Further, the allegation is

---

[11] *Heck v. Humphrey*, 512 U.S. 477 (1994).

1   again refuted by the exhibits.  The BPH record clearly evidences that the board considered the

2   factors set forth in § 3015 in determining whether Plaintiff should be granted parole.

3       To the extent that *Johnson v. Shaffer* governs this claim, not conceded, the Court may take

4   judicial notice that BPH implemented a process for addressing timely objections to the CRAs.  In

5   compliance with the remedial order and Penal Code § 3051, BPH through its Executive Officer

6   Defendant Shaffer developed a formal process, codified in regulations, for inmates and their

7   attorneys to submit written objections asserting factual errors in CRAs before their parole hearing

8   occurs.  *See* Cal. Code Regs. tit. 15, § 2240 (outlining process for inmates to submit written

9   objections to CRA).  Further, BPH submitted the proposed regulations to the Office of

10  Administrative Law as early as November 2016.  *See* 2016 CA REG TEXT 441232 (NS), 2016

11  CA REG TEXT 441232 (NS).  Further, any alleged failure to establish the protocols by the

12  deadline set forth in the *Johnson* remedial order does not rise to the level of a constitutional

13  violation.  BPH submitted proposed regulations within four months, which is a reasonable

14  amount of time to comply with such an order.  Moreover, it allowed for the statutorily mandated

15  time for class counsel and the public to comment on the proposed regulations before they became

16  law.  *See* Cal. Gov't Code § 11346.6 (d) (requiring 45-day public comment period before final

17  action to adopt proposed regulation).  In fact, the *Johnson* court itself concluded that defendant

18  Shaffer's "delay in submitting the regulations to OAL, does not constitute material non-

19  compliance with the Agreement."  Case No. 2;12-cv-01059-KJM-AC (Order dated October 6,

20  2017 at 10, Doc. No. 186).

21       Alternatively, the undersigned agrees with Defendants that the facts in *Johnson v. Shaffer*

22  are distinguishable from the instant case to the extent systematic bias was alleged and the

23  plaintiff-prisoner had no history of crime and a clean record of behavior in the correctional

24  institution.  *Johnson*, 2014 WL 6834019, at *4.  To the contrary, here, Plaintiff had a history of

25  behavioral issues during his incarceration.  Further, *supra*, the FAC and exhibits show Plaintiff

26  had the opportunity to lodge objections to the CRA form in advance of the parole hearing.  (Doc.

27  No. 11 at 169-175) (noting criminal history starting at age 14, prior crimes of violence before the

28  second-degree murder conviction, and 16 prior rules violation reports and 26 "counseling

chronos" while incarcerated).  In fact, in *Johnson*, to the extent the plaintiffs challenged the process during the parole-release hearings, the *Johnson* court granted in part defendants' motion for judgment on the pleadings citing *Greenholtz*, 442 U.S. at 16, among other cases.  *Id.* at *16-17.

Essentially, the claims set forth in the FAC are directed at the evidence the parole board relied on to deny Plaintiff's parole-release.  The FAC in conclusory terms alleges the parole board was biased but fails to identify how any Defendant was biased or identify a specific biased act by any Defendant.  Satisfying the issues Plaintiff presents with his parole board hearing in the FAC would convert each parole-release hearing into an adversarial proceeding, which is not required under the U.S. Constitution. This Court does not sit as a super appellate court to review denials by a state's parole board. Although couched in terms of due process violations, Plaintiff disagrees with the BPH decision to deny him parole and seeks a review of the substantive result of his parole hearing.[12]   As stated above, in parole-release hearings due process under the Federal Constitution is satisfied when the inmate has an opportunity to be heard and notice why the parole-release is denied.  Accordingly, the undersigned recommends the District Court grant Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Accordingly, is **RECOMMENDED**:

1.  Defendants' motion to dismiss (Doc. No. 26) be GRANTED;

2.  All other pending motions (Doc. Nos. 30, 31) be DENIED AS MOOT;

3.  That the Clerk of Court enter judgment accordingly and close this case.

---

[12] Presumably Plaintiff filed a civil rights action instead of a habeas petition to challenge the denial of parole as any habeas claim would likely be barred due to his indeterminate life sentence under *Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016).  In *Nettles*, the Ninth Circuit, in analyzing Supreme Court precedent distinguishing relief available via § 1983 or habeas corpus, concluded if a state prisoner's claim does not lie at "the core of habeas corpus," meaning where success on a claim would not necessarily lead to an immediate or speedier release, then the claim "may not be brought in habeas corpus but must be brought, 'if at all,' under § 1983." *Id.* at 931. *Richardson v. Bd. of Prison Hearings*, 785 F. App'x 433, 434 (9th Cir. 2019) (where petitioner challenged, in part, parole board's decision on 14th amendment grounds, court applied *Nettles* and found that success on Richardson's petition, as filed, would not necessarily result in his immediate release from prison. Rather, Richardson would merely be entitled to a new parole hearing.).

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    September 28, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

16